IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| B.J. BARNES & SONS TRUCKING, INC., an Idaho corporation, | ) ) ) | Civil No.  2:05-CV-351BSJ |
| Plaintiff, | ) ) | **MEMORANDUM OPINION & ORDER RE: MOTION FOR NEW** |
| vs. | ) ) ) | **TRIAL & CROSS-MOTIONS FOR ATTORNEY'S FEES** |
| DAIRY FARMERS OF AMERICA, INC., a Kansas cooperative corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

```
┌─────────────────────────────────┐
│            FILED                │
│ CLERK, U.S. DISTRICT COURT      │
│ January 30, 2007 (10:56am)      │
│      DISTRICT OF UTAH           │
└─────────────────────────────────┘
```

\* \* \* \* \* \* \* \* \*

On November 13-16, 2006, the above-entitled proceeding was tried to a jury, which returned a verdict in favor of the plaintiff, B.J. Barnes & Sons Trucking, Inc. ("Barnes") and against the defendant, Dairy Farmers of America, Inc. ("DFA"), finding a breach by DFA of the parties' Milk Hauler's Contract and awarding damages in the amount of $59,000.  On November 17, 2006, the Clerk of the Court entered Judgment to that effect (dkt. no. 140).  On December 1, both parties filed motions for an award of attorney's fees (dkt. nos. 153, 155), and on December 4, Barnes filed a motion for a new trial on the issue of damages (dkt. no. 161).  Counsel submitted memoranda and affidavits concerning the motions and the same were calendared for hearing on January 24, 2007.

At the January 24th hearing, Mary Anne Q. Wood and Darryl J. Lee appeared on behalf of Barnes; Matthew N. Evans and J. Andrew Sjoblom appeared on behalf of DFA.

The court heard the arguments of counsel and took the motions under advisement.

Having reviewed and considered the motions, memoranda and arguments of counsel in the context of the record in this case, and having examined the text of the pertinent contractual documents and the applicable legal authorities, the court now rules as follows:

### MOTION FOR NEW TRIAL

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]"  Counsel for Barnes correctly points out that "[u]nlike a Rule 50 motion, the district court judge "may set aside the verdict even though there is substantial evidence to support it."  11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2806, at 65 (2d ed. 1995) (footnote omitted).  Indeed, the Tenth Circuit has stated that "the granting of a new trial involves an element of discretion which goes further than the mere sufficiency of evidence.  It embraces all the reasons which inhere in the integrity of the jury system itself."  *Tidewater Oil Co. v. Waller*, 302 F.2d 638, 643 (10th Cir. 1962) (affirming trial court order granting new trial on the basis of insufficient evidence).

A district court may grant a new trial where the verdict is against the clear weight of the evidence or is based on false evidence, or to prevent a miscarriage of justice.  *Silver*

*Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001); *see*

*Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir. 1988) (motion for new

trial may be granted where the court believes the verdict is against the weight of the

evidence or prejudicial error has occurred) *implicitly overruled on other grounds*, *Hazen*

*Paper Co. v. Biggins*, 507 U.S. 604 (1993)); *Mike's Train House, Inc. v. Lionel, L.L.C.*,

472 F.3d 398 (6th Cir. 2006) ("We have interpreted this Rule to require a new trial only

"when a jury has reached a 'seriously erroneous result' as evidenced by[ ] (1) the verdict

being against the weight of the evidence; (2) the damages being excessive; or (3) the trial

being unfair to the moving party in some fashion, i.e., the proceedings being influenced

by prejudice or bias." (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th

Cir. 1996)));  *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) ("Although the

court's ruling on an alternative motion for a new trial involves the exercise of some

discretion, a stringent standard applies when the motion is based on insufficiency of the

evidence.  A motion will be granted on this ground only if the verdict is against the great

weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous

result."  (internal quotations and citations omitted)); *Roy v. Volkswagen of America*, 896

F.2d 1174, 1176 (9th Cir. 1990) ("The trial court may grant a new trial, even though the

verdict is supported by substantial evidence, if the verdict is contrary to the clear weight

of the evidence, or is based upon evidence which is false, or to prevent, in the sound

discretion of the trial court, a miscarriage of justice." (citing *Hanson v. Shell Oil Co.*, 541

F.2d 1352, 1359 (9th Cir. 1976)) (internal quotation omitted))); *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) ("If there is substantial evidence presented at trial to create an issue for the jury, a trial court may not grant a motion for a directed verdict or for judgment notwithstanding the verdict. The existence of substantial evidence does not, however, prevent the court from granting a motion for a new trial pursuant to Fed. R. Civ. P. 59 if the verdict is against the clear weight of the evidence."). But "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd.*, 251 F.3d at 819 (citation omitted)

As others have already observed, it seems doubtful that there is any one verbal formula that will be of much use in ruling on motions for a new trial on the grounds that the verdict is against the clear weight of the evidence:

> On the one hand, the trial judge does not sit to approve miscarriages of justice.  His power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it.  On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter . . . .  If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed, it is to be expected that he will grant a new trial.

*Landes*, 833 F.2d at 1371-72 (quoting 11 C. Wright & A. Miller, *Federal Practice and*

*Procedure* § 2806, at 48-49 (1973) (footnotes omitted)).

"A motion for new trial on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the court." *Black v. Hieb's Enter., Inc.*, 805 F.2d 360, 363 (10th Cir.1986). "The judge can weigh evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes*, 833 F.2d at 1371 (citing *Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1302 (9th Cir. 1978)); *see Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (stating that on a motion for new trial, the court "weighs all the evidence, but need not view it in the light most favorable to the nonmoving party"). The court's focus is upon "whether the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Continental Cas. Co. v. Southwestern Bell Telephone Co.*, 860 F.2d 970, 972 (10th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989).

As with a motion for judgment as a matter of law, motions for new trial are regarded with disfavor and should "only be granted with great caution." *Franklin v. Thompson*, 981 F.2d 1169, 1171 (10th Cir. 1992) (quoting *United States v. Thornbrugh*, 962 F.2d 1438, 1442 (10th Cir.1992), *vacated on other grounds*, *United States v. Abreu*, 508 U.S. 935 (1993)). The decision to grant a new trial rests within the sound discretion of the district court. *Beacham v. Lee-Norse*, 714 F.2d 1010 (10th Cir. 1983).

Because of the sanctity attached to jury verdicts, courts do not lightly overturn them. *Mid-West Underground Storage, Inc. v. Porter*, 717 F.2d

493, 502 (10th Cir. 1983).  In determining whether a new trial is
appropriate, the trial court does not sit merely as an additional juror.  *de
Perez v. Hospital del Maestro*, 910 F.2d 1004, 1006 (1st Cir. 1990).  It must
have more than the belief it would have reached a different verdict, the trial
court must "'feel that the jury quite clearly reached a seriously erroneous
result in spite of the clear weight of the evidence.'"  *Leichihman v. Pickwick
Intern.*, 814 F.2d 1263, 1267 (8th Cir.) (quoting  *Leichihman v. Pickwick
International, Inc.*, 589 F.Supp. 831, 834 (D. Minn. 1984)), *cert. denied*,
484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987).

*Miller v. Heaven*, 922 F.Supp. 495, 499-500 (D. Kan. 1996) (Crow, J.).  "Thus, even if

we do not necessarily agree with the jury's verdict, it must be upheld unless it is 'clearly,

decidedly or overwhelmingly against the weight of the evidence.'"  *Escue v. Northern

Oklahoma College*, 450 F.3d 1146, 1157 (10th Cir. 2006) (quoting *Black v. Hieb's

Enters., Inc.*, 805 F.2d at 363)).

    In this case, Barnes asserts that as to damages, "the jury's verdict does not comport

with the weight of evidence" and was "inadequate"; and that "DFA's expert witness

testified well beyond the scope of his written Rule 26 expert report," and "[b]ecause most

of the testimony presented by DFA through its expert at the trial of this matter was not

disclosed in the expert report, this violation of Rule 26 is a separate and distinct ground

for ordering a new trial on damages."  (Plaintiff's Motion for New Trial on Damages,

filed December 4, 2006 (dkt. no. 161), at 1-2.)

    Barnes identifies three components of its damages theory: (1) an improper

$18,985.12 offset against payment to Barnes for milk delivered to Meadow Gold; (2)

$29,982.77 in "numerous licensing costs and registration fees that Barnes incurred for the

hauling year that should have commenced on January 22, 2005"; and (3) $441,475 in lost

profits on Barnes' Milk Hauler's Contract with DFA resulting from DFA's improper

termination of that contract in early 2005.  (Memorandum of Law in Support of Plaintiff's

Motion for New Trial on Damages, filed December 4, 2006 (dkt. no. 162) ("Barnes' New

Trial Mem."), at ii-iii.)

As noted above, the jury awarded Barnes $59,000 for DFA's breach of the Milk

Hauler's Contract—far less than the $490,442.89 that Barnes sought.  Barnes argues that

the jury's verdict is against the clear weight of the evidence:

> The overwhelming weight of the evidence supports the conclusion
> that Barnes suffered lost profits resulting from DFA's breach of the milk
> hauling contract of $441,475.  Barnes' accounting records collected and
> reported each expense that was directly related to the DFA contract.  Based
> on the proper lost profits formula *agreed to by both experts*, only those
> costs that were directly related to the DFA contract, and that could therefore
> be saved or avoided by not performing the contract, should be deducted
> from the revenues expected during the Loss Period.  Corporate general and
> administrative expenses, such as the salaries and benefits of headquarters'
> personnel such as Boyce Barnes, Brandon Barnes and the corporate office
> staff, continued after DFA's breach of the contract.  Thus, b[y] definition,
> these costs were not avoided or saved because of DFA's breach, and thus
> are not properly included in the lost profits calculation.

(*Id.* at 7 (emphasis in original).)

Barnes presented its evidence of lost profits exceeding four hundred thousand

dollars through the testimony of its expert witness, F. Wayne Elggren.  According to

Barnes,

> Elggren meticulously examined the closest and most representative year,
> i.e., January 1, 2004 through December 31, 2004, to ascertain the revenues

that Barnes would have earned for the DFA contract.  He then evaluated the
expenses directly related to earning those revenues during the same
representative period, he made appropriate and conservative adjustments
which significantly increased the overall expenses that were deducted from
the expected revenues, and then he calculated that the loss of the DFA
contract resulted in lost profits on that contract of $441,475.

(*Id.* at 5-6.)  In turn, DFA disputed Elggren's opinion through the testimony of its own

expert, Alan Funk.  In what Barnes characterizes as "an attempt to muddy the waters and

confuse the jury," Funk disputed Elggren's allocation of Barnes' expenses to the

performance of the DFA Milk Hauler's Contract.  According to Barnes, Funk

evaluated the entire company as a whole, including the other separate and
distinct contracts Barnes had, and deducted total company expenses,
including those expenses directly related to other contracts, as well as the
corporate general and administrative expenses required to run the entire
company. Then DFA introduced, over Barnes' objection, a work paper from
Barnes' outside accountant that reflected an overall company profit, after
interest and taxes, for fiscal year 2004 of $21,401. . . . Again, this figure is
an overall company figure, not an analysis of the DFA contract separately.

(*Id.* at 6-7.)

Barnes further complains that in his critique of Elggren's testimony, "Funk

testified about specific alleged overstatements of expenses on the DFA contract.

However, no such information, calculation or opinion was ever stated in Funk's Rule 26

expert report," and that Funk's trial testimony "constituted unfair surprise" that

"prevented Barnes' counsel from being able to prepare to address such undisclosed

claims."  (*Id.* at 9.)  Funk's Rule 26(a)(2) expert report cited by Barnes[1] is one prepared as

---

[1](*See* Exhibit F to Barnes New Trial Mem.)

of January 17, 2006 in response to Elggren's own Rule 26(a)(2) expert report filed

November 30, 2005 (dkt. no. 26), in which Elggren opined that Barnes' lost profits

resulting from the wrongful termination of the DFA Milk Hauler's Contract for the period

February 1, 2005 through January 21, 2006 totaled **$960,989**.[2]

Elggren's supplemental Rule 26(a)(2) expert report was filed on February 22, 2006

(dkt. no. 58), and opined that Barnes' lost profits totaled **$433,833**, reflecting accounting

adjustments not made in his November 2005 report.  Elggren's trial testimony proffered a

similarly reduced "lost profits" figure, **$441,475**, necessarily footed on calculations

differing from those set forth in Elggren's November 2005 report and addressed by

Funk's January 17, 2006 report:

> Barnes earned $3,742,301 in total revenues for the DFA contract in the 12
> months just prior to DFA's improper termination of the contract.  Further,
> the clear weight of the evidence established that Barnes incurred
> $3,288,390 in expenses necessary to earn revenues of $3,742,301. Thus, the
> net revenue or profits for the DFA contract for a 12 month period (minus
> the 10 days Barnes performed on the contract) was $441,475.

(Barnes' Reply Memorandum in Support of its Motion for New Trial on Damages, filed

January 8, 2007 (dkt. no. 175) ("Barnes New Trial Reply"), at 5.)

Elggren having altered his own course in estimating Barnes' damages, Barnes'

counsel had no reason to expect that Funk would not do likewise in formulating his

critique of Elggren's revised opinions proffered at trial.  DFA's counsel rehearsed its trial

---

[2]This amount also included an estimate of loss to Barnes Trucking LLC, a non-party affiliate of the plaintiff.

cross-examination of Elggren during Elggren's February 28, 2006 deposition.  Elggren

defended his adjustments at his deposition, during which he was examined at some length

concerning his treatment of Barnes' overhead expenses and other questions subsequently

raised at trial.  But Barnes' counsel apparently elected to forego the same opportunity

with respect to Mr. Funk's anticipated trial testimony.

DFA's objections to Elggren's treatment of Barnes' overhead expenses was further

highlighted in DFA's September 6, 2006 motion *in limine* seeking to exclude Elggren's

opinion testimony at trial (dkt. no. 94), a motion ultimately denied by the court.  (*See*

Given this record, Barnes' counsel is hard pressed to claim unfair surprise that

Elggren's trial testimony would be challenged for excluding overhead expenses, whether

through cross-examination, expert testimony, or argument by counsel.  Barnes did not

seek to take Funk's deposition prior to trial, nor did Barnes seek to compel

supplementation of DFA's expert witness disclosures concerning his critique of Elggren's

treatment of Barnes' overhead and other expenses.[3]

According to Barnes, Funk testified concerning certain expenses which he said

---

[3]Perhaps DFA should have furnished a supplemental Rule 26(a)(2) report reflecting Funk's critique of Elggren's treatment of expenses.  Yet as Barnes' counsel has reminded us in another context:

> A party does not have the duty to amend [its disclosures] if additional or corrective information has otherwise been made known to the other parties during the discovery process or in writing.

6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.131 (3d ed. 2000) (emphasis added).

(Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Request for Attorneys' Fees, filed October 20, 2006 (dkt. no. 116), at 4.)

were reflected in the company's general ledger, but not in Elggren's calculations.  (*See* Barnes New Trial Mem. at v-vi ¶¶ 8-12; *id.* at 9.)  Either they were or they were not, and Barnes' counsel could—and did—test Funk's assertions on cross-examination. To refute Funk's critique, Barnes could also present rebuttal testimony, which it did.

Barnes argues that "the only reasonable inference that can be drawn" from the jury's $59,000 award "is [that] the jury did not understand the proper measure of damages agreed to by both experts, or were confused by the extraneous, irrelevant and oftentimes inaccurate information DFA presented about the company's financial situation as a whole."  (Barnes New Trial Reply at 5.)

Yet a third reasonable inference presents itself: that the jury did not find Elggren's treatment of the expenses attributable to the DFA Milk Hauler's Contract to be credible, thus casting doubt on Elggren's revised lost profits estimate of $441,475.  Barnes proffered no alternative lost profits estimate based upon any other expense allocation, leaving the jury to its own analysis of lost profits in the event that the jurors found that the evidence presented at trial did not preponderate in favor of Elggren's $441,475 estimate.

The jurors were instructed that they were the sole judges of the credibility of the witnesses and the weight their testimony deserves, including expert witnesses.  They were instructed that Barnes bears the burden of proof by a preponderance of the evidence as to all elements of its claim, including damages:

> If you find that the plaintiff has proven the essential elements of its claim,
> you may award only such damages as you believe will fairly and justly

compensate the plaintiff for any damages you find the plaintiff has
sustained.  As stated above, the plaintiff has the burden of proving by a
preponderance of the evidence the amount of damage reasonably and
naturally flowing from the defendant's conduct.

(Jury Instruction No. 23, Final Jury Instructions, filed November 16, 2006 (dkt. no. 135).)

They were instructed that "the law does not require mathematical precision in calculation.

There need only be a fair and rational basis in the evidence for determining the amount of

damages, if any"; that they "must reach an amount that is consistent with the evidence and

law presented in this case"; and that if they "determine the wrong involved in this action

to be of such a nature as to make it impossible to arrive at an exact figure that will reflect

the plaintiff's damages, you may award a sum that you can reasonably infer from the

evidence to reflect compensation for the wrong."  (*Id.*, Jury Instruction Nos. 24, 27, 30.)

Barnes now insists that the only sum that the jury could reasonably infer from the

evidence is Elggren's twice-revised $441,475 estimate, but that is simply not so.  DFA

disputed Elggren's treatment of Barnes' expenses attributable to DFA's Milk Hauler's

Contract, both on cross-examination of Elggren and other Barnes witnesses and its proffer

of Funk's opinions as an expert witness.  It was for the jury to decide whether Elggren

had proffered an estimate of lost profits having sufficient persuasive force to carry

Barnes' burden to prove the amount of damages resulting from DFA's breach of the Milk

Haluler's Contract.

In this case, "the verdict must stand unless it is 'clearly, decidedly or

overwhelmingly against the weight of the evidence.'"  *York v. American Tel. & Tel. Co.,*

95 F.3d 948, 956 (10th Cir.1996) (quoting *Black v. Hieb's Enters., Inc.*, 805 F.2d at

363)).  On the existing record, this court "cannot say that there is any part of the jury's

verdict that was against the clear weight of the evidence.  It is not the courts' place to

substitute our evaluations for those of the jurors."  *Union Oil Co. of California v. Terrible*

*Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) (reversing trial court ruling granting a new

trial).

Barnes' motion for a new trial on damages must therefore be denied.

**MOTIONS FOR ATTORNEY'S FEES**

Both Barnes and DFA seek an award of attorney's fees.[4]  Each claims to have

prevailed on the merits of this action to an extent sufficient to warrant such an award.  In

addition, DFA insists that none of the contractual agreements at issue in this case provide

for an award of attorney's fees to either party.

The last paragraph of Section 2 of the Milk Hauler's Contract reads:

Further, Hauler agrees to indemnify and hold DFA harmless from and
against any and all claims, demands, lawsuits, losses, damages, costs or
expenses of whatever nature, arising out of the Hauler's performance or
lack of performance under this Agreement.

The parties' Equipment Lease contains two relevant provisions, first an

indemnification clause:

12. Lessee agrees to pay, and indemnify and hold Lessor and their
respective successors and assigns harmless on an after-tax basis from, all

---

[4](*See* Motion Regarding Attorneys' Fees, filed December 1, 2006 (dkt. no. 153); Motion for Attorneys'
Fees, filed December 1, 2006 (dkt. no. 155).)

-13-

Federal, state and local taxes, fees, withholdings, levies, imposts, duties, assessments and charges of any nature whatsoever together with any penalties, fines, or interest thereon imposed against Lessor, Lessee, the Equipment, or any part thereof, by any Federal, state or local government or taxing authority in the United States, upon or with respect to the Equipment, or any part thereof, or upon the ordering, purchase, ownership, delivery, leasing, re-leasing, possession, use, maintenance, registration, titling, licensing, documentation, return, sale or other application or disposition of the Equipment, or any part thereof, or upon the rentals, receipts or earnings, arising therefrom, or upon or with respect to this Lease, or upon the rent or other sums payable by Lessee hereunder; provided however, that the foregoing indemnity shall not apply to any taxes or other impositions based upon or measured solely by Lessor's net income, and which are imposed or levied by any Federal, state of [sic] local taxing authority in the United States.

The second provides for recovery of damages, costs and attorneys fees:

13.  Lessee hereby assumes liability for and does save, defend and hold harmless Lessor from and against any and all obligations liabilities, losses, damages, claims, demand, actions and suits, judgments, costs and expenses including attorneys' fees in any way relating to or arising out of this Lease.

Barnes correctly points out that "[u]nder Utah law, attorney's fees may generally be awarded only if allowed by contract or statute."  (Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees, filed December 1, 2006 (dkt. no. 157), at 1 (citing *American Rural Cellular, Inc. v. Systems Communication Corp.*, 939 P.2d 185, 192 (Utah Ct. App. 1997)).)  And none of these provisions expressly entitle Barnes (as "Hauler" and "Lessee," respectively) to recover attorney's fees in the event of a breach of contract by DFA.

Instead, Barnes relies upon Utah Code Ann. § 78-27-56.5 (2002), which reads:

-14-

A court may award costs and attorney's fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow one party to recover attorney's fees.

*See also Dejavue Inc. v. U.S. Energy Corp.*, 993 P.2d 222, 226 (Utah Ct. App. 1999) ("Utah law provides for the reciprocal right to recover attorney fees, and permits a court to award attorney fees to either party prevailing in an action based on a written contract, when the contract permits at least one party to recover such fees.").  Barnes argues that because DFA is entitled to indemnity from under the contractual provisions quoted above, the reciprocity provision of § 78-27-56.5 applies to grant Barnes an entitlement to attorney's fees in case of breach by DFA.  Barnes concedes that "Utah case law is silent on the application of Section 78-27-56.5 to indemnity provisions," but cites a few cases from other jurisdictions that purport to lend some support to its view. (Memorandum of Law in Support of Plaintiff's Motion for Attorney's Fees, filed December 1, 2006 (dkt. no. 157), at 5,6.[5])

---

[5]*Transaction Network, Inc. v. Wellington Technologies, Inc.*, 2000 MT 23, 301 Mont. 212, 7 P.3d 409 (2000), cited by Barnes, involved indemnification language differing from that found in the Barnes-DFA agreements.  In that case, the agreement provided that "'[e]ach party hereto shall indemnify and hold the other parties harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred or required to be paid by such other parties by reason of any breach or failure of observance or performance of any representation, warranty or covenant or other provision of this agreement by such party.'" 2000 MT at ¶ 22, 7 P.3d at 413.

*Brzezinski v. Feuerwerker*, 2000 WL 1297699, * 5 (Ohio Ct. App.,  Feb. 21, 2002), also cited by Barnes, involved indemnity language similar to that of the Barnes-DFA agreements, but the court did not explain its conclusion that "the language of this clause[is] broad enough to permit the recovery of attorney fees" between the parties to that contract.  Nor for that matter did the court in *Chesapeake & Potomac Tel. Co. v. Sisson & Ryan, Inc.*, 362 S.E.2d 723 (Va. 1987), a third case cited by Barnes as awarding attorney's fees under indemnity language in a dispute between contractual parties.  *Chesapeake* in turn cites to dictum in *Idaho State University v. Mitchell*, 97 Idaho 724, 552 P.2d 776 (1976), indicating that attorney's fees may be awarded under an

-15-

DFA responds that Barnes did not preserve a claim for attorney's fees under the Milk Hauler's Contract in the Final Pretrial Order, and that in any event, the quoted provisions address indemnity for claims by third parties, not Barnes or DFA.  DFA cites to *American Rural Cellular, Inc. v. Systems Communication Corp.*, 939 P.2d 185 (Utah Ct. App. 1997), in which the court declined to read an indemnity provision to include a right to attorney's fees in disputes between the parties, in contrast to defending third-party claims.[6]

Generally, a right to indemnity arises when "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other."  *Restatement of Restitution* § 76 (1937).  The duty discharged—for which indemnity is sought—is generally a duty owed to a third party.

Where contracting parties seek to provide for recovery of attorney's fees in disputes among themselves, they generally include express language to that effect.  For example, a lease agreement may provide:

If at any time after the Effective Date, either Landlord or Tenant institutes

---

indemnity clause, again without explanation.

   *Delle Donne & Assoc. v. Millar Elevator Serv. Co.*, 840 A.2d 1244 (Del. 2004), involved the enforcement of an indemnity provision as to attorney's fees incurred in defending a third-party claim, and including attorney's fees incurred in enforcing the right to indemnity.  That is not the case here, and *Pavoni v. Nielsen*, 999 P.2d 595, 599 (Utah 2000), may be read to the contrary.

   [6]The contract in *American Rural Cellular* also included a separate arbitration clause governing disputes between the contracting parties, buttressing the conclusion that the indemnity clause did not apply to such disputes.  939 P.2d at 192.

any action or proceeding against the other relating to the provisions of this Lease or any default hereunder, the nonprevailing party in such action or proceeding shall reimburse the prevailing party for the reasonable expenses of attorney fees and all costs and disbursements incurred therein by the prevailing party, including, without limitation, any such fees, costs or disbursements incurred on any appeal from such action or proceeding.

—as did the lease at issue in *Keith Jorgensen's, Inc. v. Ogden City Mall Co.*, 2001 UT App 128, ¶ 25, 26 P.3d 872, 879, which the court read to allow recovery of attorney's fees for the successful defense of an adverse party's claims as well as the successful prosecution of a party's own claims.

Had Barnes and DFA included such language in the Milk Hauler's Contract or in the Equipment Lease, then the balance of their arguments concerning "prevailing party" and apportionment of fees among claims might well be germaine to this case.

But they did not,[7] and this court declines Barnes' invitation to construe the existing indemnity language to read as though they had.  The language of the indemnity provisions is not ambiguous, and as DFA submits, they serve to hold DFA harmless against claims by third parties.

Consequently,

**IT IS ORDERED** that Plaintiff's Motion for New Trial on Damages, filed

---

[7]In contrast, Paragraph 16 of the parties' August 16, 2001 Real Property Lease is entitled "Default" and includes language expressly contemplating "the payment of damages for the breach of this Lease by the Lessee, which damages, including reasonable attorney's fees, Lessor shall have the right to recover," and that if Lessor (DFA) successfully sues to obtain possession of the premises after default, "Lessee shall pay to the Lessor reasonable attorney's fees and costs incurred by Lessor in prosecuting said suit."

But no claim of breach of the Real Property Lease was submitted to the jury.  Barnes prevailed on its claim that DFA breached the Milk Hauler's Contract.

December 4, 2006 (dkt. no. 161), is DENIED;

     **IT IS FURTHER ORDERED** that Barnes' Motion for Attorneys' Fees, filed

December 1, 2006 (dkt. no. 155), is DENIED; and

     **IT IS FURTHER ORDERED** that DFA's Motion Regarding Attorneys' Fees,

filed December 1, 2006 (dkt. no. 153), is GRANTED IN PART to the extent that Barnes'

motion for attorney's fees is denied for lack of a contract provision providing for fees,

and DENIED IN PART, to the extent that DFA seeks an award of attorney's fees in this

action.

     DATED this 30 day of January, 2007.

                               BY THE COURT:

                               BRUCE S. JENKINS
                               United States Senior District Judge